1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CRAIG O'BOSKY,

11          Plaintiff,                    No. CIV S-07-1957 DAD

12      v.

13   MICHAEL J. ASTRUE,                   <u>ORDER</u>
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19   Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded with

20   the direction to award benefits.

21                          **PROCEDURAL BACKGROUND**

22          On April 19, 2000, plaintiff applied for disability benefits under Title II of the

23   Social Security Act (Act), alleging onset of disability on May 25, 1994.[1]  (Transcript (Tr.) at

24   _____

25   [1]  A previous application filed by plaintiff in February 1996 was denied initially and upon
     reconsideration in 1996.  (Tr. at 41-52, 55-58.)  After an administrative hearing, an unfavorable
26   decision was issued on December 12, 1997.  (Tr. at 53, 187-91.)  The Appeals Council denied
     plaintiff's request for review in May 1999.  (Tr. at 30-34.)  Plaintiff did not seek judicial review.

218-20, 233, 254-58.)  The application was denied initially on September 15, 2000, and upon

reconsideration on February 8, 2001.  (Tr. at 199-208.)  Pursuant to plaintiff's timely request, a

hearing was held before an administrative law judge (ALJ) on May 1, 2002, at which time

plaintiff was represented by counsel and testified.  (Tr. at 209, 812-50.)  In a decision issued on

August 9, 2002, the ALJ determined that plaintiff was not disabled through June 30, 2000, his

date last insured.  (Tr. at 738-48.)  On December 11, 2004, the Appeals Council granted

plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further

proceedings.  (765-76, 777-81.)  On remand, a supplemental hearing was held before the same

ALJ on December 20, 2005.  (Tr. at 851-81.)  In a decision dated July 28, 2006, the ALJ again

determined that plaintiff was not disabled through his date last insured.  (Tr. at 21-29.)  The ALJ

entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2000.
>
> 2. The claimant did not engage in substantial gainful activity during the period at issue, December 23, 1997, which is the date after the prior Administrative Law Judge's decision was issued, through his date last insured, June 30, 2000 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairment:  continued difficulties following a lumbar fusion (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, during the period at issue, the claimant had the residual functional capacity to lift 10 pounds occasionally.  He was capable of moving small objects throughout the workday.  He was capable of standing and walking in combination no more than 30 minutes at a time for a total not [to] exceed two hours in a workday.  He was capable of sitting for the remainder of the day.  He could not climb ladders or scaffolding although he could climb stairs.  He could not work at heights, around vibrations or around hazardous,

moving machinery.  Any mild mental limitations would not serve to further decrease the claimant's residual functional capacity, even when considered in combination with his back impairment.

6.     Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7.     The claimant was born on April 16, 1967, and was 32 years old on the date last insured, which is defined as a "younger individual age 18-44" (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11.    The claimant was not under a "disability," as defined in the Social Security Act, at any time from December 23, 1997 through June 30, 2000, the date last insured (20 CFR 404.1520(g)).

(Tr. at 23-28.)

On August 7, 2006, plaintiff requested review of the ALJ's decision.  (Tr. at 17, 704-34.)  The Appeals Council denied the request on August 3, 2007.  (Tr. at  10-14.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 19, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller

v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

401 (1971)).

A reviewing court must consider the record as a whole, weighing both the

evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the

five-step sequential evaluation process established under the Social Security regulations.  Title 20

of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process has been

summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.
>
> Step two: Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three: Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.

/////

4

1    404, Subpt. P, App. 1?  If so, the claimant is conclusively
     presumed disabled.  If not, proceed to step four.

2

3    Step four: Is the claimant capable of performing his past work?  If
     so, the claimant is not disabled.  If not, proceed to step five.

4    Step five: Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
5    not, the claimant is disabled.

6    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

7           The claimant bears the burden of proof in the first four steps of the sequential

8    evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

9    sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

10   (9th Cir. 1999).

11                                    **APPLICATION**

12          Plaintiff advances the following arguments in support of his motion for summary

13   judgment:  (1) the ALJ's finding that plaintiff's depression was not a severe impairment is not

14   based on substantial evidence; (2) the ALJ committed reversible error in failing to provide "clear

15   and convincing" reasons for rejecting the opinion of Dr. Yee, plaintiff's long-term treating

16   physician; (3) the ALJ's credibility findings are not supported by substantial evidence; and (4)

17   the Commissioner failed to sustain his burden of establishing that there is other work in the

18   national economy that plaintiff could perform.  These arguments are addressed below.

19   **I.  Determination of Severe Impairments**

20          Plaintiff's first argument challenges the ALJ's decision at step two of the

21   sequential evaluation process.  At this step, the ALJ must determine if the claimant has a

22   medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273,

23   1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).

24          The Commissioner's regulations provide that "[a]n impairment or combination of

25   impairments is not severe if it does not significantly limit [the claimant's] physical or mental

26   /////

                                            5

ability to do basic work activities."[2] 20 C.F.R. § 416.921(a). The Supreme Court has observed that the severity regulation serves to "identify[] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290). See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290, and adding emphasis).

Here, the ALJ found that during the relevant time, i.e., from December 23, 1997 through June 30, 2000, plaintiff had only one severe impairment: continued difficulties following lumbar fusion. (Tr. at 24.) However, the ALJ's step-two analysis is devoted entirely to plaintiff's depression, which the ALJ found to be "not 'severe,' as defined by the Act." (Tr. at 24-25.) In support of this finding, the ALJ cited "minimal mention of a mental impairment in the treatment records during the period at issue" and a Psychiatric Review Technique form dated January 24, 2001, in which a state agency psychiatrist opined that there was insufficient evidence to establish the existence of any mental impairment from the alleged onset date of disability through the date last insured. (Tr. at 24, citing Ex. B9F [tr. at 378-80].) The ALJ also gave "great weight" to the assessment of Michael D. Goldfield, M.D. (Tr. at 24, citing Ex. B14F [tr. at 414-76].) Dr. Goldfield, a psychiatrist who served as Qualified or Agreed Medical Evaluator in plaintiff's workers compensation proceedings, evaluated plaintiff on June 12, 2000, prior to

---

[2] Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

1  plaintiff's date last insured, and served his report on July 26, 2000.  (Tr. at 420.)  Dr. Goldfield

2  supplemented his report on October 27, 2000 and again on December 18, 2000, as additional

3  medical records were supplied to him, but he did not change his opinion.  (Tr. at 417-19, 415-

4  16.)  According to the ALJ, Dr. Goldfield "concluded that the claimant suffers from a dysthymic

5  disorder that causes no more than a slight disability in any of the work function areas, including

6  maintaining an appropriate work pace, performing complex tasks, relating to others and making

7  appropriate decisions."  (Tr. at 24.)  The ALJ gave "great weight to this assessment" on the

8  grounds that it was based on an actual examination of plaintiff and was consistent with plaintiff's

9  treatment records during the period at issue.  (Id.)

10          The ALJ considered but rejected the opinions of two psychiatrists who examined

11  plaintiff after his date last insured.  Alberto G. Lopez, M.D., examined plaintiff in April 2002 and

12  prepared both a written evaluation (tr. at 24, citing Ex. 9B/10[3]) and a form Medical Source

13  Statement Concerning the Nature and Severity of an Individual's Mental Impairment (tr. at 24,

14  citing Ex. B15F[4]).  The ALJ discounted Dr. Lopez's opinions on the following grounds:  the

15  doctor's opinion was rendered almost two years after plaintiff's date last insured; the doctor

16  found only mild to no significant limitations; the doctor opined that plaintiff's condition had not

17  deteriorated since 1997 and an ALJ previously found plaintiff "not disabled" in December 1997;

18  the doctor examined plaintiff on only one occasion; the doctor noted that plaintiff had never

19  sought psychological or psychiatric care, was "somewhat ambivalent" about receiving mental

20  health treatment, and did not appear to have taken any psychotropic medications; although the

21  doctor concluded that plaintiff exhibited signs of depression, the ALJ believed that "many of the

22  signs listed are also signs of pain"; the doctor concluded that plaintiff's mental impairment would

23  preclude him from working full-time but suggested that plaintiff's treatment should focus on pain

24          [3]  Dr. Lopez's report appears in the record as Exhibit B9B.  (Tr. at 755-64).

25          [4]  Dr. Lopez's medical source statement appears in the record as Exhibit B16F.  (See tr. at
26  486-89.)

1  management skills; the ALJ found it plausible that plaintiff "would have limitations because of

2  pain" but did not believe that Dr. Lopez's opinions supported a finding that plaintiff had a severe

3  mental impairment before June 30, 2000.  The ALJ concluded his discussion of Dr. Lopez's

4  opinions by emphasizing that plaintiff "has not seen the need to seek mental health treatment"

5  and by asserting that "any symptoms noted by Dr. Lopez are inadequately tied to a mental

6  condition."  (Tr. at 24.)

7          The ALJ gave even less weight to the opinion of Dr. Kalman.  (Tr. at 24-25.)  Lee

8  P. Kalman, M.D., Psy.D., M.F.C.C., examined plaintiff on November 29, 2005, and prepared

9  both a psychiatric evaluation report and a form Medical Source Statement Concerning the Nature

10  and Severity of an Individual's Mental Impairment.  (Tr. at 537-45.)  The ALJ discounted Dr.

11  Kalman's opinions on the following grounds:  the doctor examined plaintiff several years after

12  his date last insured; the doctor opined that plaintiff had been mentally impaired to the same

13  degree for over ten years despite the evidence of record showing lack of treatment and lack of

14  medication for any mental impairment during that ten-year period; and it was not evident that the

15  doctor had questioned plaintiff about his condition before his date last insured.  (Tr. at 24-25.)

16  The ALJ also did not believe that Dr. Kalman's mental status examination and assessment of

17  functioning "truly addresse[d]" plaintiff's condition prior to his date last insured, and he found

18  the opinion "not consistent with the claimant's treatment records and other weighty evidence of

19  record that are [sic] contemporaneous to the period at issue."  (Tr. at 25.)

20          The ALJ concluded that plaintiff's mental impairment "only caused him to

21  experience mild restrictions of his activities of daily living and mild difficulties maintaining

22  social functioning" while retaining "the understanding and memory, sustained concentration and

23  persistence, social interaction and adaptation skills necessary to engage in substantial gainful

24  activity."  (Tr. at 25.)

25          The court finds that the ALJ did not properly apply the law and reached a

26  conclusion contrary to substantial evidence in the record in this regard.  Treatment records and

the examining psychiatrists' reports – Dr. Goldfield's on June 12, 2000, eighteen days prior to plaintiff's last date insured, and Dr. Lopez's on May 8, 2002, slightly less than two years after plaintiff's last date insured – demonstrate that plaintiff's depression was more than a slight abnormality as of June 30, 2000, and that this mental impairment had more than a minimal effect on plaintiff's ability to work at the relevant time.

First, the ALJ's finding that there was "minimal mention of a mental impairment in the treatment records" at the relevant time is contradicted by the medical records before the court. Gary A. Schneiderman, M.D., a spine surgeon who saw plaintiff on July 13, 1998, reported that plaintiff's psychiatric symptoms were positive for depression. (Tr. at 178.) The doctor observed that plaintiff had suffered multiple industrial injuries to his lumbar spine between 1990 and 1994, had been treated for those injuries for eight years, had "failed all nonoperative modalities of treatment," had been extensively evaluated, was unable to work, and had experienced a substantially altered lifestyle. (Tr. at 177, 180.) Dr. Schneiderman advised plaintiff that it was possible to consider him for a lumbar fusion if a psychological profile showed that he could be considered a surgical candidate. (Tr. at 180-81.) On September 1, 1998, Dr. Schneiderman recommended against surgery after he reviewed the psychological profile of plaintiff prepared by Dr. Martin Shaffer on August 21, 1998. (Tr. at 283-84.) Dr. Goldfield also had an opportunity to review a report from Dr. Shaffer and noted in his October 27, 2000 supplemental report that the MMPI portion of Dr. Shaffer's report "showed [plaintiff] to have chronic pain and some associated depression." (Tr. at 417.)

Evidence of plaintiff's mental impairment during the relevant time is also found in the treatment records of Randall K. Yee, M.D., plaintiff's treating physician. On April 13, 2000, Dr. Yee prescribed the psychotropic drug Effexor at 37.5 milligrams per day for plaintiff's "associated depression" and to help his chronic pain. (Tr. at 328.) On April 18, 2000, Dr. Yee continued the Effexor at the doubled dosage of 75 milligrams per day. (Tr. at 326.) On June 5, 2000, Dr. Yee's diagnosis was chronic back pain, failed back, underlying degenerative joint

1  disease with osteophyte formation, and depression secondary to the physical impairments.  (Tr. at

2  318.)  Dr. Yee noted that plaintiff was tolerating Effexor along with the medications prescribed

3  for pain and sleep.  (Id.)  When Dr. Yee saw plaintiff on July 12, 2000, just twelve days after

4  plaintiff's date last insured, plaintiff reported that his pain intensity had increased despite all the

5  medications he had tried, and Dr. Yee described him as "very distraught and despondent about

6  not getting relief of his back pain."  (Tr. at 312.)  On September 8, 2000, Dr. Yee noted that

7  plaintiff felt "somewhat 'down'" but had no suicidal ideation.  (Tr. at 311.)  Even the neurologist

8  who performed an orthopedic examination of plaintiff on August 7, 2000, less than five weeks

9  after plaintiff's last date insured, observed that plaintiff was "a somewhat depressed appearing

10  gentleman."  (Tr. at 298.)  These records demonstrate that plaintiff's treatment records contained

11  more than "minimal mention of a mental impairment" during the period of time at issue.[5]  The

12  conclusory form opinion of the state agency psychiatrist who found insufficient evidence to

13  establish the existence of any mental impairment in January 2001 contains no indication that the

14  records described above were considered.

15      Second, a review of Dr. Goldfield's psychiatric evaluation reveals that the ALJ

16  erred in relying on it as evidence supporting a finding that plaintiff's depression was not a severe

17  impairment at the relevant time.  Dr. Goldfield spent two hours examining plaintiff on June 12,

18  2000, two additional hours performing psychological testing and reviewing the results, and

19  almost three hours reviewing voluminous medical records dating back to 1990.  (Tr. at 421.)  Dr.

20  Goldfield described plaintiff as downcast, subdued, and depressed.  (Tr. at 426.)  Plaintiff

21  admitted to depression, difficulty sleeping, tiredness, easy fatigability, difficulty concentrating,

22  feelings of low self-esteem, a loss of confidence in himself, weight gain, the giving up of

23

24      [5]  The Ninth Circuit has held that medical evidence from a physician who is not a mental
health specialist "constitutes 'competent psychiatric evidence' and may not be discredited on the
25  ground that he is not a board certified psychiatrist."  Lester, 81 F.3d at 833.  "Indeed, the treating
physician's opinion as to the combined impact of the claimant's limitations–both physical and
26  mental–is entitled to special weight."  Id.

1   previously pleasurable activities, and irritability.  (Id.)  In his review of the medical records, Dr.

2   Goldfield noted the following:  in April 2000 Dr. Yee placed plaintiff on Effexor; in July 1998

3   Dr. Schneiderman found a psychological evaluation essential before considering plaintiff for

4   surgery; in August 1998 Dr. Shaffer determined the outcome potential of surgery to be marginal

5   based on psychometric indices; the salient features of Dr. Goldfield's own June 12, 2000 MMPI-

6   2 report were "physical complaints and depressed mood."  (Tr. at 426-31.)  Dr. Goldfield's

7   MMPI-2 report also reflected plaintiff's nervousness, irritability, reaction to minor problems with

8   physical symptoms, tendency to develop physical problems when under stress, difficulty

9   managing routine affairs, indications of poor memory and concentration problems, and inability

10  to make decisions.  (Tr. at 431.)  At Axis I, Dr. Goldfield diagnosed dysthymic disorder (chronic

11  depression) and psychological factors affecting medical condition with increasing back pain

12  when under stress.  (Id.)  At Axis IV, Dr. Goldfield diagnosed occupational injury and inability to

13  return to his previous occupation, causing depression and stress-aggravated back pain.  (Tr. at

14  432.)

15          Dr. Goldfield's concluding summary and impression included the following

16  remarks:  plaintiff "is currently suffering from classical signs and symptoms of a Dysthymic

17  Disorder and from Psychological Factors Affecting His Medical Condition"; plaintiff's

18  emotional disorders are caused entirely by the physical injury suffered in 1994; as a result of the

19  injury, "he is depressed with difficulty sleeping, tiredness, easy fatigability, difficulty

20  concentrating, feelings of low self-esteem, a loss of confidence in himself, weight gain, and the

21  giving up of previously pleasurable activities"; he is irritable and has a lowered frustration

22  tolerance as a result of the injury and the chronic pain and depression from that injury; he was

23  placed on Effexor 75 milligrams a day by his treating physician.  (Tr. at 432-33.)  Noting that

24  plaintiff was "not interested in any psychotherapy," Dr. Goldfield indicated that he would not

25  force the issue but would strongly recommend that antidepressant medications be continued

26  /////

1  because "[he] is in definite need of continued psychoactive medications, which could be

2  prescribed by his primary care physician, Dr. Yee."  (Tr. at 433.)

3          With respect to work functions, Dr. Goldfield found no disability in plaintiff's

4  ability to comprehend and follow instructions, perform simple and repetitive tasks, influence

5  people, and accept and carry out responsibility for direction, control, and planning.  (Tr. at 433-

6  34.)  He found that plaintiff had a slight disability in the ability to maintain a work pace

7  appropriate to a given workload as well as a reduced ability to perform at a consistent pace

8  because of his depression and other factors, which precluded him "from handling a stressful job

9  in the open labor market, as stress aggravates his back pain."  (Tr. at 433.)  Dr. Goldfield found a

10  slight disability in plaintiff's ability to perform complex and varied tasks, explaining that

11  plaintiff's "pain and depression are causing a reduced ability to synthesize, coordinate and

12  analyze data."  (Id.)  Dr. Goldfield found a slight disability in plaintiff's ability to relate to other

13  people beyond giving and receiving instructions, again citing plaintiff's depression as a factor in

14  the disability and elaborating that plaintiff has a reduced ability to perform work activities

15  requiring negotiating with explaining or persuading.  (Tr. at 434.)  Dr. Goldfield found a slight

16  disability in plaintiff's ability to make generalizations, evaluations, or decisions without

17  immediate supervision, as well as a reduced ability to set realistic goals or make plans

18  independently of others.  (Id.)

19          While Dr. Goldstein did not find more than a slight disability in any one work

20  function, it is significant that he found a slight disability in numerous functions, and he

21  specifically found that plaintiff could not handle a stressful job in the open labor market.

22  Plaintiff's claim of a mental impairment is hardly groundless when the impairment has more than

23  a minimal effect on his ability to deal with stress, maintain an appropriate work pace, perform at

24  a consistent pace, perform complex and varied tasks, relate to people, make decisions without

25  immediate supervision, and set realistic goals or make plans independently of others.

26  /////

1          Third, a review of Dr. Lopez's opinion reveals that the ALJ improperly rejected

2   the opinion, which also supports a conclusion that plaintiff's mental impairment should be

3   deemed severe for purposes of step-two analysis.  While Dr. Lopez examined plaintiff almost

4   two years after plaintiff's date last insured, his psychiatric report is not based merely on

5   plaintiff's condition in April of 2002.  Dr. Lopez had been provided with "the voluminous

6   medical file," and he reviewed those records "in their entirety."  (Tr. at 755.)  He concluded that

7   plaintiff had been significantly depressed since approximately 1995 and that the depression had

8   proved to be chronic.  (Tr. at 762.)  He determined that plaintiff "does have a chronic depressive

9   disorder, best characterized as a dysthymic disorder," that plaintiff has "a clinically depressed,

10  irritable mood, with multiple neurovegetative signs of depression," and that plaintiff's dysthymic

11  disorder flowed from his work injuries and the development of chronic pain that followed.  (Id.)

12          With respect to plaintiff's ability to work, Dr. Lopez opined that

13          [i]n all likelihood, there has been a level of psychiatric disability
            from 1995, up until the time of this examination.  It does not
14          appear that this has been severe enough at any point in time to
            warrant a total preclusion from returning to the open labor market.
15          However, there has been a level of partial psychiatric disability.

16  (Tr. at 763.)  He determined that plaintiff was "incapable of withstanding the pressures of an

17  eight-hour a day/five-day a week work, because of problems with sleep and low energy."  (Id.)

18  Dr. Lopez identified the following work function impairments:  (1) plaintiff's ability to

19  comprehend and follow instructions is somewhat impaired because of poor memory and

20  concentration, as well as irritability; (2) plaintiff's ability to relate to others in a workplace –

21  coworkers, supervisors, and the public – is impaired because of continuing depression,

22  irritability, and admitted moodiness; (3) plaintiff's ability to maintain a work pace appropriate to

23  a given work load and his ability to perform more complex and varied task are both impaired

24  because of problems with severe low energy, fatigue, and exhaustion.  (Id.)

25          The agency form completed by Dr. Lopez on April 24, 2002 provides additional

26  detail about the severity of plaintiff's mental impairment.  The form defines "mildly limited" as

1    meaning "[p]erformance of the designated work-related mental function is somewhat impaired,"

2    such that the individual can perform the function at a level no greater than 80 to 85% of normal

3    in terms of speed and accuracy and can perform that function only occasionally to frequently, i.e.,

4    for 1/3 to 2/3 of an 8-hour workday.  (Tr. at 486.)  "Moderately limited" is defined as meaning

5    "[p]erformance of the designated work-related mental function is not totally precluded, but it is

6    substantially impaired in terms of speed and accuracy and can be performed only seldom to

7    occasionally during an 8-hour workday," which might mean, for example, for durations lasting

8    from 5 to 15 minutes and not totaling more than 2 to 3 hours in an 8-hour workday.  (Id.)  In the

9    category of understanding and memory, Dr. Lopez found plaintiff mildly limited in one of three

10   work-related mental functions.[6]  (Tr. at 486-87.)  In the category of sustained concentration and

11   persistence, Dr. Lopez found plaintiff moderately limited in three of the eight work-related

12   mental functions and mildly limited in the other five.[7]  (Tr. at 487.)  In the category of social

13   interaction, Dr. Lopez found plaintiff moderately limited in two of the five work-related mental

14   functions and mildly limited in two of the remaining three.[8]  (Tr. at 487-88.)  In the category of

15   adaptation, Dr. Lopez found plaintiff mildly limited in three of four work-related mental

16   functions.[9]  (Tr. at 488.)  Dr. Lopez opined that work stressors of all kinds would increase

17   plaintiff's level of impairment in all work-related mental functions.  (Id.)  He estimated that

18   _____

19      [6] Dr. Lopez found plaintiff mildly limited in his ability to understand and remember detailed instructions or tasks.

20      [7] Dr. Lopez found that plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual; to sustain an ordinary routine
21   without special supervision; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without
22   an unreasonable number and length of rest periods.  (Tr. at 487.)

23      [8] Dr. Lopez found plaintiff moderately limited in his ability to interact appropriately with the general public or customers and in his ability to get along with co-workers or peers without
24   unduly distracting them or exhibiting behavioral extremes.  (Tr. at 487-88.)

25      [9] Dr. Lopez found plaintiff mildly limited in his ability to respond appropriately to expected or unexpected changes in the work setting, to be aware of normal hazards and take
26   appropriate precautions, and to set realistic goals or to make plans independently of others.

1   plaintiff's mental impairment was sufficiently severe that it would render him unable to complete

2   a workday, if employed full-time, approximately twice per month.  (Tr. at 489.)  Finally, it was

3   Dr. Lopez's opinion that plaintiff's limitations had lasted for 12 continuous months and that, on

4   the basis of evaluation, treatment, and records, the onset of plaintiff's limitations – at the severity

5   described in the form – commenced in 1995.  (Id.)

6           The court finds that the medical evidence does not clearly establish that plaintiff's

7   mental impairment was a slight abnormality having no more than a minimal effect on his ability

8   to work.  Consequently, the ALJ should have identified plaintiff's depression as a severe

9   impairment at step two of the sequential evaluation process.  As a result of the ALJ's failure to

10  identify depression as a severe impairment at step two, the ALJ's decision is not supported by

11  substantial evidence in the record as a whole.  See Schneider, 223 F.3d at 973; Morgan, 169 F.3d

12  at 599).  In reaching this conclusion, the undersigned is mindful that the step-two inquiry is "a de

13  minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290.

14  Regardless of whether the evidence related to a severe impairment establishes disability at step

15  three, or ultimately leads to a finding of disability in combination with the claimant's other

16  impairments, it was error not to recognize an impairment as severe when the medical evidence

17  does not clearly establish that the impairment had no more than a minimal effect on the

18  claimant's ability to work at the relevant time.  Accordingly, plaintiff is entitled to summary

19  judgment on his challenge to the ALJ's finding that plaintiff's depression was not a severe

20  impairment.

21          As a general rule, when a step-two error is found, remand is required so that the

22  ALJ can proceed beyond step two of the evaluation process with respect to all severe

23  impairments and properly consider the previously omitted impairments in combination with all

24  of claimant's impairments, whether severe or not.  See Webb, 433 F.3d at 688 (remanding for

25  further proceedings where "[t]he ALJ should have continued the sequential analysis beyond step

26  two because there was not substantial evidence to show that Webb's claim was 'groundless'");

1   see also SSR 85-28, 1985 WL 56856, at *3.  However, the court will turn to plaintiff's additional

2   arguments in order to determine whether it is necessary to remand this case for further

3   administrative proceedings.

4   **II.  Rejection of Treating Physician's Opinions**

5               Plaintiff argues that the ALJ committed reversible error in failing to provide

6   "clear and convincing" reasons for rejecting the opinion of Dr. Yee, plaintiff's treating physician.

7               It is well established that the weight to be given to medical opinions depends in

8   part on whether they are proffered by treating, examining, or non-examining professionals.

9   Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a

10  treating source than to the opinion of doctors who do not treat the claimant."  Id.  This is so

11  because a treating doctor is employed to cure and has a greater opportunity to know and observe

12  the patient as an individual.  Id.; Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059,

13  1063 (9th Cir. 1990).  However, the ALJ need not give weight to conclusory opinions supported

14  by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999);

15  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

16              "At least where the treating doctor's opinion is not contradicted by another doctor,

17  it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting

18  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion

19  is contradicted by another doctor, the Commissioner may not reject this opinion without

20  providing 'specific and legitimate reasons' supported by substantial evidence in the record for so

21  doing."  Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

22  If a treating professional's opinion is contradicted by an examining professional's opinion that is

23  supported by different, independent clinical findings, the ALJ may resolve the conflict.  Andrews

24  v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The opinion

25  of a non-examining professional, without other evidence, is an insufficient basis for rejecting the

26  opinion of either a treating or examining professional.  Lester, 81 F.3d at 831.

Here, the medical records reflect that  Randall K. Yee, M.D., was plaintiff's treating physician from February 1999 to July 2002.  (See tr. at 304-39, 366-67, 389, 393-412, 451-58, 463-76, 491-508, 547-52.)  It appears that from May 1994 through 1998, plaintiff was treated by Rafaelito S. Victoria, M.D., a physician in the same medical group as Dr. Yee.[10]  (See tr. at 95-106, 340-65, 368-69, 459-62.)  Although both Dr. Victoria and Dr. Yee treated plaintiff during the relevant period from December 23, 1997 through June 30, 2000, the ALJ did not mention Dr. Victoria by name and made only cursory references to  Dr. Victoria's treatment records.  (See tr. at 26.)  The ALJ considered but rejected the opinions of Dr. Yee, stating that Dr. Yee

> wrote that the claimant had failed conservative treatment, and he offered acupuncture for what he now categorized as "extensive" degenerative joint disease and "chronic pain syndrome [with a] total disability" (Exhibit B-7F/35 [tr. at 337]).  Although Dr. Yee also gave the claimant very specific and very severe limitations,[11] he noted that these limitations would apply for approximately the next six months (Exhibit B-7F/33 [tr. at 335]).  Less than 12 months later, Dr. Yee wrote that he again thought the claimant was "totally disabled," but he gave limitations that were consistent with sedentary work (Exhibit 7 B-7F/28, 20-26 [tr. at 330, 322-28] ).  Dr. Yee later told the claimant to avoid sitting for longer than 20 minutes at a time[12] (Exhibit B7F/12-19 [tr. at 314-21]).  I reject Dr. Yee's opinions for the following reasons:  they are based on properly discounted subjective complaints; there are inconsistencies between the opinions and clinical and laboratory findings; the physician is advocating on the claimant's behalf; there are inconsistencies between the opinions and the treatment records; the physician's opinions have changed without evidence of a change in objective clinical findings; the opinions are unsupported,

---

[10]  Dr. Yee saw plaintiff at least once prior to 1999 in Dr. Victoria's absence.  (Tr. at 346) (medical record by Dr. Yee dated July 3, 1996, indicating that "[t]his is Dr. Victoria's patient.").

[11]  The limitations indicated by Dr. Yee were as follows:  "No lifting over 5 lbs.  No prolonged walking, standing, bending, stooping, kneeling, squatting, climbing stairs or ladders, pushing, or pulling."  (Tr. at 335.)

[12]  The limitations listed by Dr. Yee on May 12, 2000, six weeks before plaintiff's date last insured, were as follows:  avoid sitting for longer than 20 minutes at a time and no prolonged walking/standing, no repetitive bending/stooping, no kneeling or squatting, no climbing of stairs or ladders, no pushing or pulling, no lifting over 10 pounds.  (Tr. at 321.)  The same limitations had been identified on May 8, 2000.  (Tr. at 324.)

1   brief and/or conclusory; and the opinions are inconsistent with one
    previously expressed in the clinical findings.
2

3   (Tr. at 27.)

4          The court finds that the ALJ's cursory discussion of Dr. Yee's opinions misses the

5   mark.  First, the ALJ's assertion concerning "properly discounted subjective complaints" would

6   appear to be based on the ALJ's failure to recognize plaintiff's depression as a severe

7   impairment, as set forth supra, and on the ALJ's failure to properly evaluate plaintiff's subjective

8   complaints, as set forth infra.  The alleged discrepancies, inconsistencies, and changes of

9   opinion are presented as mere generalities, have not been demonstrated on the record, and appear

10  to be based on the ALJ's failure to take into consideration plaintiff's severe mental impairment

11  and symptoms of pain.  The ALJ's charge of advocacy on plaintiff's behalf fails because the

12  purpose for which a report is obtained, by itself, does not provide a legitimate basis for rejecting

13  it and the ALJ did not note any evidence of an impropriety on the part of Dr. Yee.  See Lester, 81

14  F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their

15  patients collect disability benefits.  While the Secretary may introduce evidence of actual

16  improprieties, no such evidence exists here."); Saelee v. Chater, 94 F.3d 520, 523 (9th Cir.

17  1996); Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998).

18         Notably, the ALJ's list of reasons for rejecting Dr. Yee's opinions does not

19  include an assertion that Dr. Yee's opinions were contradicted by the opinion of any treating or

20  examining physician.  The court is unpersuaded by defendant's argument that Dr. Yee's opinions

21  were controverted by the opinion of Dr. Mikol, the neurologist who performed a complete

22  orthopedic evaluation of plaintiff on August 7, 2000.  First, the court may not affirm a decision to

23  deny benefits on a ground not invoked in making the decision to deny benefits.  Pinto v.

24  Massanari, 249 F.3d 840, 847 (9th Cir. 2001); see also Stout v. Comm'r of Soc. Sec. Admin.,

25  454 F.3d 1050,  1054-56 (9th Cir. 2006).  Second, Dr. Mikol's opinion considered only

26  plaintiff's physical residual functional capacity and did not consider the impact of any mental

18

impairment or subjective symptoms.  The court also notes that Dr. Mikol's opinion contained anomalies, including his express observation that plaintiff was "in obvious discomfort during much of the examination" and sat "on the edge of the examination table uncomfortably," which the doctor contradicted by stating in his diagnosis that "[d]uring the examination he is in no discomfort."  (Tr. at 298-99.)

The court finds that the ALJ failed to offer clear and convincing reasons for rejecting Dr. Yee's uncontradicted opinion.  Plaintiff is entitled to summary judgment on his claim that the ALJ erred  by failing to provide such reasons for rejecting Dr. Yee's opinions.

## III.  Credibility Findings

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  "'[T]he ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281).  See also Morgan, 169 F.3d at 599 ("Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.").[13]

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Clearly, family members who see the claimant on a daily basis are

---

[13]  The "clear and convincing" standard "is the most demanding required in Social Security cases."  Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

1    competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec. Admin., 166

2    F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the

3    ALJ chooses to reject or discount the testimony of a lay witness, he must give reasons that are

4    germane to that particular witness.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

5            The determination of credibility and the resolution of conflicts in the testimony

6    are functions of the ALJ acting on behalf of the Commissioner.  Morgan, 169 F.3d at 599;

7    Saelee, 94 F.3d at 522.  In general, an ALJ's assessment of credibility should be given great

8    weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The ALJ may employ ordinary

9    techniques of credibility evaluation and may take into account prior inconsistent statements or a

10   lack of candor by the witness.  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  The ALJ

11   may also rely, in part, on his own observations.  See Han v. Bowen, 882 F.2d 1453, 1458 (9th

12   Cir. 1989).  However, the ALJ cannot substitute his observations for medical diagnoses.  Marcia

13   v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

14           In this case, the ALJ addressed credibility issues in his analysis of plaintiff's

15   residual functional capacity.  (Tr. at 26.)  The ALJ provided a brief summary of plaintiff's written

16   statements and hearing testimony, noted that the reports written by plaintiff's mother were

17   consistent with plaintiff's statements, and found that plaintiff's medically determinable

18   impairments "could have been reasonably expected to produce some of the alleged symptoms,

19   but that [plaintiff's] and his mother's statements concerning the intensity, persistence and

20   limiting effects of these symptoms for the period of issue are not entirely credible."  (Tr. at 26.)

21   The ALJ did not identify the symptoms that could have been reasonably expected from the

22   medically determinable impairments or the symptoms that could not have been reasonably

23   expected.  Nor did the ALJ specify the statements he found credible as opposed to those he did

24   not find credible.

25           In apparent support of his finding that the statements of plaintiff and his mother

26   were not entirely credible, the ALJ cited medical evidence, including an MRI dated June 8, 1998,

1  which the ALJ described as showing degenerative disc disease with mild and minimal

2  abnormalities but no significant nerve root impingement, and an MRI dated November 13, 2000,

3  which the ALJ represented as showing "no worsening."  (Tr. at 26, citing Ex. B-1F/2 [tr. at 277]

4  & Ex. B14F/41 [tr. at 454].)  The ALJ cited medical records which he described as prescribing

5  conservative treatment, imposing minimal restrictions on plaintiff's activities, and

6  recommending against surgery.  The ALJ also noted that plaintiff did not undergo surgery until

7  more than two years after his last date insured and asserted that plaintiff was declared able to

8  perform sedentary work less than one year after surgery.  The ALJ then determined plaintiff's

9  residual functional capacity by rejecting Dr. Yee's opinions and giving great weight to the

10  opinion of an examining neurologist who performed an orthopedic evaluation of plaintiff in

11  August 2000.  (Tr. at 26-27.)

12          The court finds that the ALJ's analysis violates the applicable legal standard by

13  rejecting plaintiff's subjective complaints based on apparent lack of objective medical evidence.

14  The medical records cited by the ALJ in his decision were either not fairly represented or were

15  taken out of context.  In any event, the records cited do not demonstrate that plaintiff's subjective

16  complaints are not credible when all impairments and symptoms are considered.  The ALJ's

17  citation to plaintiff's statements about daily activities is unavailing, as the limited activities

18  described by plaintiff do not demonstrate plaintiff's ability to work.  As has long been

19  recognized, claimants need not be "utterly incapacitated to be eligible for benefits."  Fair, 885

20  F.2d at 603.  See also Webb, 433 F. 3d at 688; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.

21  2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain

22  daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

23  in any way detract from her credibility as to her overall disability.").  In addition, "'it is a

24  questionable practice to chastise one with a mental impairment for the exercise of poor judgment

25  in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting

26  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

1    In the complete absence of any evidence of malingering by plaintiff, the ALJ has

2 not given clear and convincing reasons for finding plaintiff's statements "not entirely credible."

3 Although the ALJ found the statements of plaintiff's mother "not entirely credible," he gave no

4 reason germane to the particular witness in making that finding.  The ALJ's rejection of

5 plaintiff's testimony is grounded in large part on the erroneous rejection of plaintiff's depression

6 as a severe impairment and his rejection of the treating physician's opinions.  The court finds that

7 the ALJ's decision regarding the credibility of plaintiff and his mother is not supported by

8 substantial evidence in the record and that plaintiff is entitled to summary judgment on this claim

9 as well.

10 **IV.  Plaintiff's Ability to Perform Other Work**

11    Upon finding a claimant unable to return to his past relevant work, the burden

12 shifts to the Commissioner to prove that the claimant is capable of engaging in other jobs that

13 exist in substantial numbers in the national economy.  Bruton v. Massanari, 268 F.3d 824, 828

14 (9th Cir. 2001).  If the ALJ relies on the testimony of a vocational expert, the ALJ must question

15 the expert in a manner that properly takes into account all limitations on the claimant's ability to

16 engage in work-related functions, including nonexertional limitations.  Moisa v. Barnhart, 367

17 F.3d 882, 887 (9th Cir. 2004); Tackett, 180 F.3d at 1103-04; Holohan v. Massanari, 246 F.3d

18 1195, 1208-09 (9th Cir. 2001).  "While the ALJ need not include all claimed impairments in his

19 hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the

20 claimant's subjective complaints not included in the hypothetical."  Light, 119 F.3d at 793.

21    In this case, the ALJ found plaintiff able to engage in other jobs in the national

22 economy on the basis of the vocational expert's response to two hypothetical questions, the first

23 of which was as follows:

24    I'd like for you to consider for me, please, a 38-year-old individual
     with a high school education and that past work [as a construction
25    foreman and frame carpenter].  Further consider that this individual
     is capable of lifting 20 pounds occasionally, and 10 pounds
26    frequently.  He's capable of standing and walking in combination

1

2

3

> for at least six hours in a work day, and capable of sitting without
> limit, were not required to stand or walk [sic].  He can, cannot
> climb ladders or scaffolding, although he can climb stairs.  Should
> not work at heights, or around vibration, or around hazardous
> moving machinery.  Those are the only limits.

4   (Tr. at 875.)  The vocational expert responded that such an individual could work at light,

5   unskilled jobs such as sewing machine operator, small parts assembler, and inserting machine

6   operator.  (Id.)

7                    The ALJ's second hypothetical question was as follows:

8

9

10

11

12

> Same age, education, and vocational background, now capable of
> lifting 10 pounds occasionally, and capable of moving small
> objects throughout the work day.  Now capable of standing and
> walking in combination no more than 30 minutes at a time, total
> not to exceed two hours in a day, and capable of sitting the
> remainder of the day without limit.  With the same nonexertional
> restrictions I've given you in hypothetical number one, are there
> any jobs at that level, too?

13   (Tr. at 875-76.)  The vocational expert responded that an individual described in the ALJ's

14   second hypothetical could work at sedentary jobs such as table worker, ampule sealer, and

15   electronics loader.  (Tr. at 876.)

16                    The ALJ's hypothetical questions did not include any mental limitations or any of

17   the limitations found by Dr. Yee on plaintiff's ability to do sedentary work.  Counsel posed

18   modified hypothetical questions to the vocational expert, first adding a limitation to simple,

19   routine, repetitive tasks.  The vocational expert testified that the individual could still perform the

20   light work jobs and the sedentary ones because all of the jobs identified were unskilled, simple

21   and routine.  (Tr. at 876-77.)  Next, counsel added a limitation on plaintiff's ability to complete a

22   normal work day, specifying that plaintiff's speed and accuracy would be limited to 80 to 85

23   percent of normal for two thirds of an eight-hour work day and to less than 80 percent for the

24   remaining one third of the day.  (Tr. at 877-78.)  In response to this inquiry, the vocational expert

25   testified that there would be no jobs the individual could perform.  (Tr. at 878.)  Finally, counsel

26   asked the vocational expert what the workplace tolerance would be for absenteeism for a person

1  in an entry level unskilled job.  (Tr. at 879.)  The vocational expert testified that it would vary by

2  employer but the average would be one day per month.  (Id.)

3          The undersigned finds that the vocational expert's testimony in response to the

4  flawed hypothetical questions posed by the ALJ has no evidentiary value.  See Embry v. Bowen,

5  849 F.2d 418, 422 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  On

6  the other hand, the modified hypothetical questions posed by plaintiff's counsel are supported by

7  substantial evidence in the record.  The limitations on plaintiff's ability to complete a normal

8  work day and maintain an appropriate pace are supported by Dr. Goldfields' opinion in June

9  2000 that plaintiff was slightly disabled in numerous work functions, including his ability to deal

10  with stress, maintain an appropriate work pace, and perform at a consistent pace.  Such

11  limitations, as well as the likelihood of absenteeism, are also supported by Dr. Lopez's opinions

12  in April 2002 that there had likely been a level of partial psychiatric disability from 1995 onward,

13  that plaintiff was incapable of withstanding the pressures of an eight-hour a day/five-day a week

14  work week due to numerous work function impairments, including impaired ability to maintain a

15  work pace appropriate to a given work load, and inability to complete a full workday

16  approximately twice per month.  The vocational expert's testimony provided in response to

17  counsel's modified hypothetical questions demonstrates that, when the effects of plaintiff's

18  severe mental impairment are considered, there are no jobs in the national economy that plaintiff

19  can perform.

20                                              **CONCLUSION**

21          The decision whether to remand a case for additional evidence or to simply award

22  benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

23  1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that,

24  "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

25  by further administrative proceedings, or where the record has been thoroughly developed."

26  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396,

1  1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.

2  Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

3          Here, the record has been adequately developed to allow the court to find plaintiff

4  disabled by determining that his depression is a severe impairment, by crediting Dr. Yee's

5  opinions, and by crediting the testimony and reports of plaintiff and his mother.  No useful

6  purpose would be served by further administrative proceedings, and the disability application at

7  issue was filed more than nine years ago.  In addition, the Appeals Council's remand order

8  already provided an opportunity for further development of the record.  The vocational expert's

9  testimony affirmatively in responses to the properly modified hypothetical questions establishes

10 that plaintiff was unable to perform a significant number of jobs in the national economy prior to

11 his date last insured.

12         For all of these reasons, this matter will be remanded with the direction to award

13 benefits on the ground that plaintiff was under a disability as defined by the Social Security Act

14 prior to June 30, 2000, plaintiff's last date insured.  See Moore, 278 F.3d at 925 (remanding for

15 payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining

16 physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly

17 discounted the opinion of the treating physician").

18         Accordingly, IT IS HEREBY ORDERED that:

19         1.  Plaintiff's motion for summary judgment (Doc. No. 20) is granted;

20         2.  Defendant's cross-motion for summary judgment (Doc. No. 21) is denied;

21         3.  The decision of the Commissioner of Social Security is reversed; and

22         4.  This case is remanded with the direction to award benefits from December 23,

23 1997.

24 DATED: August 21, 2009.

25

DAD:kw

26 Ddad1/orders.socsec/obosky1957.order

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE